UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCUS SMITH,

    Defendant.

Case No. 22-20073
Honorable Laurie J. Michelson

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS [20]**

Law enforcement officers took Marcus Smith into custody on February 10, 2022. After signing a *Miranda* waiver form, Smith was questioned by two law-enforcement officers about illegally possessing a firearm in 2018 and his suspected involvement in a 2014 murder. Smith now moves to suppress the statements he made during the interview. He says his *Miranda* waiver was not valid because he did not fully understand his rights and the consequences of waiving those rights. But that position is not supported by the videotape of his interview or the testimony at the suppression hearing. Thus, the motion is DENIED.

**I.**

On October 31, 2018, two witnesses informed Detroit police officers that Marcus Smith had discharged a firearm outside a residence on Evanston street

after a dispute about taking his child to school. (ECF No. 20, PageID.66.) An investigating officer recovered a gold .40 caliber shell casing on the driveway of the residence. (*Id.*) Nothing transpired, however, for over three years. Then, on February 10, 2022, federal agents arrested Smith on an outstanding warrant as he was on his way to work. (ECF No. 24, PageID.84.)

Smith was taken to an interview room in the McNamara Building in Detroit and handcuffed to a bar on the wall. (ECF No. 20, PageID.66.) While in custody, Smith was interviewed for about an hour and a half by FBI special agent Joe Kelso and Detroit police officer and FBI task force officer Dianna Napier. The interview was videotaped. (June 28, 2022 Hrg. Ex. 1.) At the beginning of the interview, Napier read Smith his *Miranda* rights. This was memorialized in writing, with Smith signing an acknowledgment form indicating that he understood his rights (to counsel and against self-incrimination) and was waiving them. (ECF No. 24, PageID.84; June 28, 2022 Hrg. Ex. 2.) Thereafter, Smith was questioned about the October 2018 shooting as well as a separate homicide investigation. (ECF No. 25, PageID.95.) Smith denied involvement in both. (Hrg. Ex. 1.)

Smith was ultimately charged in this Court with being a felon in possession of a firearm. (ECF No. 11.) He seeks to suppress any statements he made during the custodial interview from being introduced at trial, claiming an invalid waiver of his *Miranda* rights. (ECF No. 20.) The Court held an

2

evidentiary hearing on June 28, 2022 and heard testimony from Napier and Smith. The parties then provided supplemental briefing. (ECF Nos. 29, 30.) After considering all of the briefing, the videotape of the interview, and the testimony at the suppression hearing, the Court agrees with the government that nothing put the law enforcement officers on notice that Smith did not understand his *Miranda* warnings and did not voluntarily waive them. There is no basis to suppress his statements.

## II.

The Fifth Amendment provides, in relevant part, that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Statements made by a defendant in response to custodial police interrogation are not admissible unless the defendant has first been apprised of his *Miranda* rights and has validly waived them. *See United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003); *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).

A valid waiver is voluntary, knowing, and intelligent. *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010). In turn, waiver is voluntary when "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is intelligent when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*.

3

"Only if the 'totality of the circumstances surrounding the [interrogation]' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (quoting *Moran*, 475 U.S. at 421). The government must prove waiver by a preponderance of the evidence. *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (citing *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986)).

Smith does not claim his statements were coerced. His motion rests entirely on whether his *Miranda* waiver was unknowing.

### III.

Smith "acknowledges that (1) an agent verbally read *Miranda* warnings to [him], and (2) [he] signed an FBI Advice of Rights form." (ECF No. 25, PageID.96.) Indeed, the video shows Napier reading the form to Smith. The *Miranda* rights are listed in separate bullet points above a concluding paragraph that expressly states, "I have read the statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." (Hrg. Ex. 2.) As the form is being read, Smith appears to be nodding his head in understanding. (Hrg. Ex. 1.) Smith then signed the form. (Hrg. Ex. 2.) It is true, as Smith points out, that Napier did not ask him directly

4

whether he understood the rights she just read to him. But nothing suggested he did not.

After Napier read the form to Smith, she appeared to ask him whether, now knowing his rights, he wanted to talk to them. (Hrg. Ex. 1 at 7:38.) Smith stated, "Talk to ME. What did I do?" (*Id.* at 7:42.) Smith wanted to know why he was arrested. He testified that he spoke with the agents voluntarily because he wanted to know what this was all about. He further testified that he knew he did not have to speak with Napier. And once the officers began the interview, Smith was an active participant. It is clear that he speaks and understands English. It is equally clear that he understood the questions being asked. His answers were responsive and appropriate. During portions of the interview, Napier read from pages in a file. At times, Smith put on his glasses to follow along. Nothing suggests that he cannot read or understand the content of the materials. As the government correctly points out, "Smith coherently explained his version of the various events discussed and denied any participation in the homicide or the illegal possession of a firearm, which suggests that he did not simply acquiesce to Napier's request to waive his rights." (ECF No. 29, PageID.128.)

And this was not Smith's first custodial interrogation. He has a significant criminal history involving many felony and misdemeanor convictions. Smith was interviewed in 2014 when he was 41 years old in

connection with a larceny investigation. (June 28, 2022 Hrg. Ex. 3.) He provided a coherent written statement on a form that contained his *Miranda* rights and a waiver of those rights. (*Id.*) Napier testified that she was aware of this form at the time she interviewed Smith.

But despite what is depicted on the video, Smith contends that the government has not established he understood his *Miranda* rights. (ECF No. 30, PageID.137.) Smith testified that because of ADHD, he was in special education classes as a child and never completed the seventh grade. He had to repeat both the fifth and sixth grades. He explained that he does not read very well. But Smith also acknowledged that he never conveyed that information to Napier. Yet the "comprehension aspects of the waiver inquiry should be examined 'primarily from the perspective of the police,' such that where '[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] *Miranda* waiver.'" *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (alterations in original) (quoting *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009) (en banc)). There was nothing about Smith's conduct, responses, or demeanor that gave Napier any indication Smith did not or could not understand his *Miranda* rights. He had waived them before, in 2014, after writing out a statement. He understands English. He understood Napier's questions and responded to them coherently for over an hour. "Without any indication that [Smith] did not

6

understand the proceedings, [Napier] was not required to inquire further into [Smith's] education, maturity, or mental state." *United States v. Meredith-Hill*, No. 20-3083, 2021 WL 3079695, at *4 (6th Cir. July 21, 2021).

Smith's claim that he did not understand the consequences of waiving his *Miranda* rights suffers the same fate. (ECF No. 30, PageID.147–148.) The relevant question is not whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but rather whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

Smith testified that he is bi-polar but has not been taking his mental health medications for years. At the time of the interview, he was also tired from not sleeping well the previous night and had a migraine headache because he had not taken his blood-pressure medication. But again, none of this was revealed to Napier. Nor was it obvious. There is nothing about the interview that suggests Smith was feeling tired, not feeling well, or struggling to comprehend as a result of any mental health issues. And Smith acknowledged he knew that he did not have to speak with Napier.

Also, at the end of the interview, Napier was filling out forms prior to transferring Smith to the U.S. Marshals for his arraignment. Napier asked Smith if he was under the influence. He said "no." (Hrg. Ex. 1.) And while

7

Smith mentioned his past drug addiction during the interview and got animated at times when he was trying to remember a piece of information or was incredulous at what was being suggested, he was lucid, alert, and coherent. (*Id.*) Napier testified that nothing made her feel as if Smith was under the influence. Napier also asked Smith if he was taking any medications or had any medical concerns. He again said "no." (*Id.*) Thus, "from the perspective of the police," there was nothing that seemed to be preventing Smith from understanding the *Miranda* waiver that he signed. *See Al-Cholan*, 610 F.3d at 954. Indeed, at the time of the interview, Napier knew that Smith was employed, that he took care of his disabled significant other, and that he was helping to raise his young son.

There is simply no basis for finding that Smith did not knowingly and intelligently waive his *Miranda* rights before speaking with law enforcement.

### IV.

Thus, for the reasons given, Smith's motion to suppress is DENIED.

Dated: July 14, 2022

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES DISTRICT JUDGE